URA MAY ENGLISH, Respondent, v. JOHN W. ENGLISH, Appellant.

St. Louis Court of Appeals. Submitted on Briefs May 3, 1911. Opinion Filed June 6, 1911.

1. **APPELLATE PRACTICE: Weighing Evidence: Divorce.** It is the duty of the appellate court to pass on the weight and sufficiency of the evidence, in determining the correctness of the trial court's action in granting a divorce.

2. **DIVORCE: Indignities: Sufficiency of Evidence.** In an action by a wife for divorce, on the statutory ground that defendant had offered her such indignities as to render her condition as his wife intolerable, the evidence is reviewed and *held* not sufficient to warrant a decree for plaintiff.

3. ———: **Rules of Decision.** Marriage is not to be dissolved for light and trivial matters which mutual forbearance and consideration would remove.

Appeal from Shelby Circuit Court.—*Hon. Nat M. Shelton,* Judge.

REVERSED AND REMANDED (*with directions*).

*Humphrey & Gose* for appellant.

The evidence does not disclose any acts or conduct that amount to indignities as contemplated by the statute or as defined in our law. Such indignities as will authorize the granting of a divorce must amount to a species of mental cruelty. Goodman v. Goodman, 80 Mo. App. 281; Holschbach v. Holschbach, 134 Mo. App. 247. Declarations such as, "she would leave plaintiff and never live with him again," or "he told her she had better go home," do not amount to indignities as contemplated by the statute. Holschbach v. Holschbach, supra; Cannon v. Cannon, 17 Mo. App. 394; Hooper v. Hooper, 19 Mo. 357.

*E. M. O'Bryen* and *Jno. D. Dale* for respondent, filed argument.

REYNOLDS, P. J.—On the 25th of November, 1908, plaintiff, then a young woman about twenty years of age, was married to defendant, a young man about twenty-six years of age, both of them having lived in Shelby county practically all their lives, and acquaintances for two years or more before their marriage. Before the marriage defendant had been working on a farm some three miles from where plaintiff resided with her father and mother, the father a farmer in Shelby county. Whether defendant worked on shares or as owner or as a hired man is not clear, but he boarded with the lady who, as we understand, is living on the farm. When the marriage took place between the parties the husband took his wife to this farm and they boarded with this lady, having their own room in the house, but all living together as one family. The parties to this suit lived together as husband and wife until the 11th of July following, or in the language of plaintiff, she lived with defendant "seven months and two weeks." Leaving him she went to the home of her parents and on the 16th day of December, 1909,

a little over one year after the marriage, commenced this action for a divorce.

The statutory ground assigned in the petition is that defendant had offered plaintiff such indignities as to render her condition intolerable. The specifications of indignities, summarized, are that a week after the marriage, plaintiff desired to go to her father's home, about three and one-half miles from where she and her husband were living, to visit there with some relatives and that defendant flew into a passion and refused to take her to her father's, and plaintiff being anxious to see her relatives, went to her father's and visited for five hours and returning home found defendant in a bad temper and an ugly mood and that he "sulked for several days;" that afterwards, early in January, 1909, plaintiff was expecting her mother and a lady friend to visit her and told defendant of it, but defendant demanded that she go with him and haul corn and said that her mother could visit on the next day, as he expected plaintiff to work that day, and he compelled her to go with him and haul corn; that she went with him and after she had returned to their home, defendant also returned and was angry and abused her and was cross for several days; that after plaintiff had hauled this corn she wanted to spend the night with her parents but defendant refused to go with her or to take her there or come after her, and told her if she did go she would have to get some one to bring her home. Her brother brought her home and defendant refused to speak to her and appeared angry and was sullen and having prepared himself for church went with the lady with whom they were boarding; that before going he became angry, kicked the chairs over and left plaintiff alone in the house, just before leaving the house defendant saying to plaintiff that he was sorry he got married; that on divers dates since the last named date defendant had become angry without any cause

and abused plaintiff and continued his abuse almost
to the 23d of June, when plaintiff went to her father's
where she had been invited to gather cherries, where-
upon defendant became angry, flew into a passion, and
said to plaintiff that she had better go back to her
father's and stay; that defendant was cross and surly
from this time in June until the 11th of July, when she
asked him to take her to church; he refused and re-
fused to catch a horse for her and began to abuse her,
whereupon she told defendant that she could not put
up with his abuse any longer, that she could go home
where she would be treated like she was human. In
reply to this defendant told her to go and stay. As a
further indignity plaintiff charges that besides doing
all the housework and attending to raising chickens
and looking after milk and butter, defendant made her
plow corn, would not furnish her any shoes to wear
while doing such work and during the entire period
of their married life had purchased less than five dol-
lars worth of wearing apparel for her. There were no
children born of the marriage. Plaintiff asks for re-
storation of her maiden name and for an allowance
for support and maintenance.

The answer, admitting the marriage, denies all
the other allegations.

The case was tried by the court and, as recited
in the decree, the court having heard the evidence,
took the case under advisement "and having had the
evidence reduced to writing and considered that and
the pleadings," rendered a decree dissolving the mar-
riage and restoring plaintiff her maiden name, award-
ing costs against plaintiff. So far as the record shows,
no order was made concerning alimony or mainte-
nance. From this decree defendant has duly perfected
his appeal to this court.

We have read with very great care, not once but
again, all the evidence in this case as presented in the
abstract furnished by counsel.

In all cases such as this, in which the witnesses are before the trial court, heard by the trier and the value of their testimony weighed by him, possibly aided in great measure by the demeanor, conduct and appearance of the witnesses, an appellate court is at some disadvantage. Hence it is exceedingly reluctant to depart from the conclusion arrived at by the trial court. But inasmuch as the laws of our state provide for an appeal in cases of this kind, and the practice in our. state is uniform and unvarying to treat them as in equitable actions, while they are statutory, an appeal carries with it the obligation on the part of the appellate court to determine for. itself, on the evidence presented, the very right of the matter. With all the consideration that we always give to the conclusion arrived at by the trial court, we are bound, under the law and the duties of our office, to pass on the weight and sufficiency of the evidence in determining the correctness of the action of the trial court on that evidence. Here we are in a measure freed from embarrassment, for it appears that the learned trial judge did not himself determine the case until he had the evidence transcribed. So that we have before us just what was ultimately controlling.

On careful consideration of the pleadings and all the evidence in the case, we have concluded that this decree should not have been granted.

Even the petition is meager in setting out such facts as constitute indignities which should constitute grounds for a divorce. For the most part, they are trivial, even childish. No attack has been made on the petition, however, and we do not consider it necessary to pass on its sufficiency.

Reading over the testimony of plaintiff, and she was her sole witness, we find that it falls far short of proving even what by liberal construction can be designated as substantial, real, indignities, and even on

these she was contradicted by her husband and by Mrs. Hickland, the only outside witness in the case.

It appears that these young people were farmers, really boy and girl, raised on the farm, accustomed to farm work. Plaintiff knew exactly into what condition she was entering when she married this defendant. She knew that he was a young man, working a farm and that as his wife she would share that labor with him. She knew that he was a man of limited means, for she testified that he told her, about a year before the marriage, that if he was able to raise two hundred dollars he could clear himself of debt. She testified that her husband did not furnish her with many articles of wearing apparel. She came to him as a bride; whether she had wearing apparel of her own is not in evidence. Her own testimony fails to show any compulsion by her husband to make her join him in the farm work; in point of fact, the impression that we gather from reading that testimony is that she went out working with him on the farm to be near him; she certainly fails to show compulsion, although she does deny that she volunteered. She testified that her husband told her to go home and that he was sorry he married her. Her husband's version of this is, that on one occasion when they were having some words, at the time when she had returned from her father's on the cherry picking expedition, he said to her he thought she should have come home a little sooner and she gave him to understand that she would come when she pleased, whereupon he told her he did not think she was doing right and told her she had better go and stay a week and get her visit out. The husband testified that he thought his wife was doing what she did voluntarily; that he was poor and they were trying to get a start. His version of the conversation in which his wife testified that he had told her that he was sorry he married her was, that in one of their "spats" his wife was crying and he told her

that if he was causing all this trouble he wished he had not married her. The wife was asked if generally they got along pretty well and did the best they could. She said sometimes they did, sometimes they did not, and she testified that except as to these occasional quarrels that she told of they got along very well together. The husband and wife were the only witnesses as to these "spats" or occurrences between them. No other witness was produced; they occurred when they were alone. Each of them was allowed to testify as to these matters without objection. Defendant, testifying, practically denied or gave a different color to all of the charges plaintiff made and to which she testifed. He testified, in effect, that when his wife went out to work with him she said she could do it and insisted on going when he told her that she could not do the work. The court asked defendant if his wife was a good worker and he answered, "Yes, sir; none better," and that she did a great deal of it.

Mrs. Hickland, the lady with whom the parties lived, testified that she had lived in Shelby county over fifty-one years; that defendant had been living at her house and farming with her some two years before the marriage; her house was a six-room house and the husband and wife had their own room; that while she had never been in that room with them and could not speak of anything that took place there or when they were alone together, they were constantly around the house with her, all ate at the same table; while she was the housekeeper, plaintiff and defendant lived with her and while she was the manager plaintiff helped about the housework, the milking and the cooking; had never seen any difference between the parties; had never seen defendant sulking about the house; they all lived together like one family, except when the husband and wife were in their own room; never saw any ill-temper or sulkiness displayed by the husband; they seemed to get along together very

well. Her version of the visit of plaintiff's mother and some other of her relatives to the house was, that on that occasion plaintiff herself insisted on going out to work with her husband but that he did not want her to go because her mother and friend were coming and had told her that he had called on some neighbor to come and help him with the work. Plaintiff told him that she would go with him; that she might as well have the money as for him to pay it to one of these neighbors. This lady was the only witness out side of the parties themselves. In fact on all matters testified to by the parties and in which there was apparent contradiction, Mrs. Hickland's testimony tended to corroborate that of defendant.

This was substantially the testimony in the case.

Our law concerning divorce does not permit the courts to sever marriages for the acts here in evidence. These acts do not constitute such statutory "indignities" as require or justify the interposition of the courts. The state and the community are more concerned with the marital relation than with any other, not only domestic but commercial. While very liberal in allowing the dissolution of the marriage relation, the law demands of parties seeking the aid of the courts that they should show grave cause. Marriage is not to be dissolved for light or trivial matters, so light and so trivial that mutual forbearance and a little consideration from one for the other will remove them. The matters in evidence in this case do not even tend to show that the conduct of defendant to this plaintiff was of a character to constitute such indignities as should or in fact did render the condition of plaintiff intolerable. The judgment of the circuit court is reversed and the cause remanded, with directions to the circuit court to dismiss plaintiff's suit without prejudice. *Caulfield, J.,* concurs. *Nortoni, J.,* not sitting.